**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**CASSANDRA M. GORMAN,**

        **Plaintiff,**

    **v.**                                        **5:14-cv-00103 (TJM/CFH)**

**CAROLYN W. COLVIN,**
**Acting Commissioner of Social Security,**

        **Defendant.**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**THOMAS J. McAVOY**
**Senior United States District Judge**

## DECISION and ORDER

Plaintiff Cassandra M. Gorman brought this suit under § 205(g) of the Social Security Act ("Act"), as amended, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income (SSI) benefits under Title XVI of the Social Security Act. Plaintiff alleges that the decision of the Administrative Law Judge ("ALJ") denying the application for benefits is not supported by substantial evidence and contrary to the applicable legal standards. The Commissioner argues that the decision is supported by substantial evidence and made in accordance with the correct legal standards. Pursuant to Northern District of New York General Order No. 8, the Court proceeds as if both parties had accompanied their briefs with a motion for judgment on the pleadings.

**I.    PROCEDURAL HISTORY**

Plaintiff protectively filed an application for SSI on April 4, 2011, which was denied

1

(Tr. 59-60, 151-57, 164). Plaintiff and her attorney appeared at an administrative hearing held on October 25, 2012, before administrative law judge (ALJ) Richard E. Guida, who denied Plaintiff's claim in a decision dated November 8, 2012 (Tr. 13-30, 32-58). The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review on December 30, 2013 (Tr. 1-4). This action followed.

## II. FACTS

The parties do not dispute the underlying facts of this case. The Court assumes familiarity with these facts and will set forth only those facts material to the parties' arguments.

## III. THE COMMISSIONER'S DECISION

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 4, 2011 (Tr. 18). At step two, the ALJ found that Plaintiff's depressive disorder, posttraumatic stress disorder (PTSD), and polysubstance abuse, were "severe" impairments (Tr. 18). At step three, the ALJ found that Plaintiff's impairments, although severe, did not meet or equal any of the Listing of Impairments (Listings), set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 19-20). Prior to proceeding to step four, the ALJ assessed Plaintiff's RFC and concluded that she retained the ability to perform the full range of work at all exertional levels, and she had the following nonexertional limitations: Plaintiff could perform unskilled work that was limited to simple, routine, and repetitive tasks, involving only simple, work-related decisions and few, if any, workplace changes; and she was limited to only occasional interactions with supervisors, co-workers, and the public (Tr. 20-25). At step four, the ALJ concluded that Plaintiff had no past relevant work (Tr. 25).

At step five, the ALJ concluded that Plaintiff was not disabled because jobs existed in significant numbers in the national economy that Plaintiff could perform (Tr. 26- 27). Thus, the ALJ denied Plaintiff's claim for SSI (Tr. 27).

**IV. STANDARD OF REVIEW**

The Court's review of the Commissioner's determination is limited to two inquiries. *See* 42 U.S.C. § 405(g). First, the Court determines whether the Commissioner applied the correct legal standard. *See Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999); *Balsamo v. Chater*, 142 F.3d 75, 79 (2d Cir. 1998). Second, the Court must determine whether the Commissioner's findings are supported by substantial evidence in the administrative record. *See Tejada*, 167 F.3d at 773; *Balsamo*, 142 F.3d at 79. A Commissioner's finding will be deemed conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g); *see also Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)("It is not the function of a reviewing court to determine *de novo* whether a Plaintiff is disabled. The [Commissioner's] findings of fact, if supported by substantial evidence, are binding.")(citations omitted). In the context of Social Security cases, substantial evidence consists of "more than a mere scintilla" and is measured by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(citation omitted). Where the record supports disparate findings and provides adequate support for both the Plaintiff's and the Commissioner's positions, a reviewing court must accept the ALJ's factual determinations. *See Quinones v. Chater*, 117 F.3d 29, 36 (2d Cir. 1997)(citing *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982)).

## V.     DISCUSSION

The Plaintiff offers five grounds for challenging the ALJ's conclusions. Each is addressed below.

### a.     Failure to Order Consultative Intelligence Examination

Plaintiff argues that the ALJ erred because he failed to develop the record. Plaintiff contends that the ALJ should have ordered a consultive intelligence examination because evidence existed that she had significant cognitive limitations. Therefore, Plaintiff insists, the ALJ's RFC finding is "not an accurate reflection of Plaintiff's limitations." *See* Plaintiff's Brief (P. Brf.) at 12-13. Plaintiff further contends that she "may have an intellectual disability pursuant to Listing 12.05(C)." *See* P. Brf. at 13-15.

An ALJ has a duty to develop the record even when a plaintiff is represented by counsel, *Perez v. Chater*, 77 F.3d 41, 47-48 (2d Cir. 1996), but a claimant has the ultimate burden of proving she is disabled. *See* 42 U.S.C. § 423(d)(5)(A); 42 U.S.C. § 1382c(a)(3)(H)(i)*;* 20 C.F.R. § 416.912(a); *Schauer v. Schweiker*, 675 F.2d 55, 59 (2d Cir. 1982); *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983). The decision to obtain a consultative examination is made on a case-by-case basis at the discretion of the Commissioner. *See* 20 C.F.R. §§ 416.917, 416.919.

Although Plaintiff's 2003 school records indicate that she was classified as learning disabled in the area of reading and writing, they also indicate that she had average cognitive abilities. *See* Tr. 245. Intelligence testing (the Wechsler Intelligence Scale for Children – III Edition (WISCIII)) performed in June 1999 revealed IQ scores in the average range, *i.e.*, verbal IQ of 84, performance IQ of 100, and full scale IQ of 91. *See* Tr. 244. The records

4

also reveal that Plaintiff's learning disability in reading and writing was "more of a problem because [she had] been out of school for such a long period of time." *See* Tr. 245. Plaintiff admitted that she was in special education primarily due to her behavioral problems ("anger issues" and not getting along with the other children). *See* Tr. 40-42. Plaintiff's educational records do not provide a basis upon which to conclude that a consultive intellectual examination was required.

Psychological consultative examiner Dr. Shapiro estimated that Plaintiff's intellectual functioning was in the deficient range, but she also concluded that Plaintiff retained the capacity to understand and follow simple instructions and directions, perform simple and perhaps some complex tasks independently, and learn some new tasks. *See* Tr. 23-24, 420-24. Dr. Shapiro's mental status examination revealed that Plaintiff's speech intelligibility was fluent; expressive and receptive language was adequate; thought processes were coherent and goal-directed; attention and concentration was intact; she was able to do counting, simple calculations, and serial threes; and recent and remote memory skills were intact. *See* Tr. 23, 422. Moreover, Dr. Shapiro noted Plaintiff's extensive activities of daily living, including the ability to do chores, care for her children (including reading to them), and manage money. *See* Tr. 19, 23, 423. Like the educational records, the totality of the report from Dr. Schapiro does not support Plaintiff's contention that a consultive intellectual examination was necessary.

Furthermore, state agency medical consultant Dr. Kamin concluded that, notwithstanding Plaintiff's second grade reading ability, she did not have an impairment that met or medically equaled a Listing and retained the capacity for simple work in a low contact

5

setting. *See* Tr. 24-25, 425-42.  Because state agency medical consultants' opinions constitute expert opinion evidence which can be given weight if supported by medical evidence in the record, *see* 20 C.F.R. § 416.927(e)(2); Social Security Ruling (SSR) 96-6p, 1996 WL 374180; *Diaz v. Shalala*, 59 F.3d 307, 313 n.5 (2d Cir. 1995), the ALJ did not need further evaluation of Plaintiff's intellectual functioning.

Plaintiff also has not met her burden to show that she satisfies the criteria of Listing 12.05C.  Plaintiff has not demonstrated that she has the requisite deficits in adaptive functioning. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05 ("Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22"); *Talavera v. Astrue*, 697 F.3d 145, 153 (2d Cir. 2012) (deficits in adaptive functioning constitute a separate requirement of the Listing).  Rather, the evidence presented to the ALJ provided substantial evidence to support a determination that Plaintiff did not meet the Listing.  Plaintiff was able to manage her personal and daily living needs independently, prepare meals, do chores (including cleaning and organizing the house), care for her three young children (including reading to them), manage money, count change, and shop when she was accompanied, *see* Tr. 19, 21, 23-24, 37-38, 42, 49, 423, 444, 460; was able to take public transportation if there were not a lot of people on the bus, although she sometimes needed to walk to avoid being around crowds (a limitation that was not a function of her alleged cognitive deficits), *see* Tr. 19, 21, 24-25, 52, 423, 466; was able to attend appointments regularly despite having transportation issues, and she was also working on earning her driver's permit, *see*

Tr. 22-25, 464-66, 483, 487; looked for part-time work, *see* Tr. 24, 460; and admitted that she wanted to get her GED but had not yet done so because there were too many people in the class for her, not because of a problem with intellectual capacity. *See* Tr. 23, 44.

There was also substantial evidence supporting the ALJ's conclusion that Plaintiff retained the capacity to perform unskilled work that was limited to simple, routine, and repetitive tasks, involving only simple, work-related decisions and few, if any, workplace changes; and she was limited to only occasional interactions with supervisors, co-workers, and the public. *See* Tr. 20. Plaintiff fails to point to evidence during the relevant period showing that her intellectual capacity precluded her from engaging in simple, routine, and repetitive unskilled work activities, and therefore the ALJ had no duty to order a consultive intellectual evaluation. *See Tankisi v. Comm'r of Soc. Sec.*, 521 Fed. Appx. 29, 32 (2d Cir. 2013) (finding no duty to order consultative intelligence evaluation in response to a few stray remarks unsupported by other record evidence and not alleged by Tankisi as a potential disability, and record did not suggest any further cognitive limitations than those already incorporated into RFC finding for work involving no complex or detailed instructions); *Brown v. Astrue*, 2012 WL 2953213, at \*7 (N.D.N.Y. July 19, 2012)(finding sufficient evidence in record regarding Brown's cognitive abilities); *Haskins v. Comm'r of Soc. Sec.*, 2008 WL 5113781, at \*7, n. 5 (N.D.N.Y. Nov. 25, 2008) (finding no duty to order consultative intelligence evaluation where evidence did not support work-related functional limitations resulting from the possible mental impairment). Plaintiff's motion on this ground is denied.

### b.    Step Two Error

Plaintiff contends that the ALJ erred at Step Two. First, Plaintiff contends that the

7

ALJ erred because he failed to mention that she had been diagnosed with obsessive-compulsive disorder (OCD) and anxiety, and was considered obese.  Second, Plaintiff contends that the ALJ erred by failing to find Plaintiff's obesity, anxiety, and OCD  medically determinable, severe impairments.

Following the step two determination that Plaintiff had the severe impairments of depressive disorder, posttraumatic stress disorder (PTSD), and polysubstance abuse, the ALJ concluded that "the evidence does not establish the claimant's alleged physical impairments have more than a minimal effect on the claimant's ability to perform work-related functions." Tr. 18.  In reaching this determination, the ALJ considered the physical examination by consultative examiner Dr. Perkins-Mwantuali.  This yielded diagnoses only of history of PTSD; history of abnormal Pap smear; scarring of the left tympanic membrane; and enlarged thyroid on examination. *See* Tr. 18, 444-47.   While a notation was made that Plaintiff weighed 189 pounds at a height of 5'2" (rendering a body mass index in the "obese" category),  Dr. Perkins-Mwantuali also noted that Plaintiff had a normal gait and stance, was able to rise from a chair without difficulty, needed no help getting on and off of the examination table, had a full range of motion, strength was full (5/5) in upper and lower extremities, and there was no evident muscle atrophy. *See* Tr. 445-46. Dr. Perkins-Mwantuali concluded that Plaintiff had no objective limitations. *See* Tr. 18, 446-47.   The ALJ properly gave great weight to Dr. Perkins-Mwantuali's opinion, which was supported by the physical examination findings. *See Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983) (report of a consultative examiner may constitute substantial evidence to contradict the opinion of a treating physician).  The physical examination findings

8

provided substantial evidence for the conclusion that Plaintiff's obesity did not significantly limit her physical or mental ability to do basic work activities. *See Martin v. Astrue*, 337 Fed. Appx. 87, 89 (2d Cir. 2009)("[S]ubstantial evidence in the record supports the ALJ's determination that Martin's obesity is not a 'severe' impairment that 'significantly limits [her] physical or mental ability to do basic work activities.'")(quoting 20 C.F.R. § 404.1520(c)). Although the ALJ did not specifically reference Plaintiff's obesity, the analysis of her physical impairments provided a substantial basis for discounting her obesity at step two.

Moreover, for an impairment to be considered severe, Plaintiff has the burden to show that it has caused functional limitations that significantly limit or preclude her from engaging in basic work activities during the relevant time period. *See* 20 C.F.R. §§ 416.905, 416.908, 416.909, 416.920(c), 416.920a, 416.921; SSR 96-3p, 1996 WL 374181; *Brogan-Dawley v. Astrue*, 484 Fed. Appx. 632, 633 (2d Cir. 2012) (ALJ properly found impairments to be nonsevere, as they predated or postdated the relevant period or did not significantly limit ability to do basic work activities)(citing *Jasinski v. Barnhart*, 341 F.3d 182, 183 (2d Cir. 2003)); *Meadors v. Astrue*, 370 Fed. Appx. 179, 182 (2d Cir. 2010). Plaintiff fails to offer any support for her assertion that her obesity resulted in any physical limitations, or that her obesity prevents her from performing the medium and light exertion jobs (laundry worker, hand packer, and assembler) identified by the vocational expert, which the ALJ found that Plaintiff could perform at step five of the sequential evaluation. *See* Tr. 26-27, 55-56.

The ALJ also considered the medical evidence pertaining to Plaintiff's mental impairments, and reasonably did not consider anxiety and OCD separately from her other

9

impairments, including her depressive disorder and PTSD, both of which the ALJ found to be severe impairments. *See* Tr. 18-25. Plaintiff specifically contends that her anxiety limited her to interacting with only one or two adults at a time, and she was very precise in her schedule and did not do well if interrupted. *See* P. Brf. at 16-17. Plaintiff also contends that her OCD, and specifically her obsessive cleaning of her house, "could affect [her] ability to concentrate or maintain a schedule," as, for example, she will not do any cooking in the morning until she has cleaned every dish. *See* P. Brf. at 17. As support for her contention, Plaintiff points to the October 3, 2012 opinion of therapist Laurie Sanderson, L.C.S.W., and evidence from before the relevant period, including treatment notes from 2003 and 2009. *See* P. Brf. at 16-17; citing Tr. 245, 271, 365, 367, 369, 495-97. Plaintiff also points to two notes from Ms. Sanderson in 2012. *See* P. Brf. at 17; citing Tr. 470, 487. However, these notes reflect that Plaintiff's anxiety symptoms on those two occasions were rated at only zero and three on a severity rating scale of zero to 10. *See* Tr. 470, 487.

The ALJ considered the medical evidence from the relevant period (which began on April 4, 2011), including the records and opinion from Ms. Sanderson. *See* Tr. 22-25. Contrary to Ms. Sanderson's opinion that Plaintiff would be unable to maintain regular attendance and be punctual (*see* Tr. 496), the records reflect that Plaintiff was able to consistently attend her therapy appointments despite having transportation issues. See Tr. 22-25, 464-66, 483, 487. Plaintiff also demonstrated intact attention and concentration during the examination by Dr. Shapiro. *See* Tr. 19, 23, 422. Moreover, the ALJ partly credited Plaintiff's allegations regarding anxiety symptoms, including her allegation that she had panic attack episodes when she was around crowds. *See* Tr. 19, 21, 25, 48-49.

10

Specifically, the ALJ's RFC finding limited Plaintiff to simple unskilled work with few workplace changes and only occasional interactions with supervisors, co-workers, and the public. *See* Tr. 20, 25. Accordingly, Plaintiff has failed to demonstrate any additional functional limitations stemming from her mental impairments and obesity, and the ALJ did not err in his step two finding.

Finally, even if Plaintiff had other severe impairments, the ALJ proceeded past step two to consider her claim, considering all medically determinable impairments throughout the sequential evaluation. *See* Tr. 19-27. Courts have found that any error in the ALJ's analysis at step two is harmless where the ALJ found claimant had other severe impairments, and continued beyond step two. *See Stanton v. Astrue*, 370 Fed. Appx. 231, 233 n.1 (2d Cir. 2010). For these reasons, Plaintiff's motion on this ground is denied.

### 3. The ALJ's RFC Finding Supported by Substantial Evidence

Next, Plaintiff contends that the ALJ's RFC finding is not supported by substantial evidence because the ALJ erred in his evaluation of the opinions of social worker Ms. Sanderson and consultative examiner Dr. Shapiro. *See* P. Brf. at 17-21.

The ALJ properly considered and gave little weight to the restrictive portions of the opinion of social worker Ms. Sanderson. *See* Tr. 24-25. Under the regulations, licensed clinical social workers are not among the practitioners recognized as "acceptable medical sources." *See* 20 C.F.R. § 416.913; SSR 06-03p, 2006 WL 2329939.[1] While they are among "other" medical sources who may present evidence of the severity of a claimant's

---

[1] The ALJ correctly noted that, although Ms. Sanderson's opinion was co-signed by psychologist Ronald Fish, Ph.D., Plaintiff testified that she did not know Dr. Fish, which indicates that he was not an examining or treating physician, and the opinion was therefore not entitled to any greater weight on that account. See Tr. 25, 39, 497; 20 C.F.R. § 416.927(c).

11

impairment and the effect of the impairment on a claimant's ability to work, their opinions are not entitled to the same weight as an acceptable medical source. *See* 20 C.F.R. § 416.913(d)(1); SSR 06-03p, 2006 WL 2329939 (providing that only acceptable medical sources may be considered as treating sources, and may give medical opinions that are entitled to controlling weight). Although the ALJ was not required to afford Ms. Harding's statement any special weight, he set forth an extensive rationale in declining to credit the restrictive portions of Ms. Sanderson's opinion. *See* Tr. 22-25. Furthermore, the ALJ also considered that, while much of Ms. Sanderson's opinion was consistent with the ALJ's RFC finding, the restrictive portions of Ms. Sanderson's opinion were inconsistent with her own treatment notes. *See* Tr. 24-25, 495-97.[2]

The ALJ did not err by discrediting Ms. Sanderson and Dr. Shapiro's opinions that Plaintiff would have difficulty working due to her difficulty taking public transportation because of her anxiety, and her lack of a driver's license. *See* P. Brf. at 17, 19, 24; Tr. 423, 497. None of the reasons given by Plaintiff for missing scheduled appointments with Ms. Sanderson during the relevant period (which began on April 4, 2011) related to her alleged anxiety symptoms. *See* Tr. 454 ("couldn't make it she apologizes"), Tr. 459 ("no transportation"), Tr. 478 ("out of town"), Tr. 479 ("has to go to WIC"), Tr. 482 ("has to walk sister"), Tr. 485 ("doesn't want to walk in storm with children").

Contrary to Plaintiff's contention, the ALJ properly considered Dr. Shapiro's opinion

---

[2]For example, the treatment records from August 19, 2011 show that Plaintiff's anxiety was rated at a four out of 10, cognitive dysfunction was rated at two out of 10, and all of the other categories (including depression) were rated at zero out of 10. *See* Tr. 25, 457. The ALJ also noted that, during most sessions, Ms. Anderson noted few symptoms aside from depression and worried thoughts. *See* Tr. 25, 448, 450, 452, 457, 460, 464-66, 472-74, 477, 483, 487, 494. Moreover, Ms. Anderson observed that Plaintiff was able to interact with social workers and other personnel without difficulties. *See* Tr. 25, 491, 494.

12

and provided a sufficient rationale for his decision to give it only some weight. *See* Tr. 19, 23-25, 420-24. The ALJ was not required to credit the restrictive portion of Dr. Shapiro's opinion, including that Plaintiff "appears to find it extremely difficult to relate to and interact well with others," and "appears to have difficulty adequately dealing with stress." *See* Tr. 23, 25, 423; *Pellam v. Astrue*, 508 Fed. Appx. 87, 89-90 (2d Cir. 2013) (finding no requirement that the agency accept the opinion of a consultative examiner concerning a claimant's limitations; and even though ALJ justifiably did not credit all of the consultative examiner's findings, the consultative examiner's opinion largely supported the ALJ's RFC determination). Dr. Shapiro examined Plaintiff only once and her mental status examination revealed no signs of anxiety that would support such limitations. *See* Tr. 25, 422; 20 C.F.R. § 416.927(c)(3)-(4). The examination revealed that, although Plaintiff's mood was depressed (not anxious), her demeanor and responsiveness to questions was cooperative; her manner of relating, social skills, and overall presentation were adequate; her personal hygiene and grooming were good; motor behavior was normal; eye contact was appropriate; speech and thought processes were normal; sensorium was clear; affect was of full range; and she was oriented times three. *See* Tr. 23, 25, 422. Moreover, Plaintiff's attention and concentration, and recent and remote memory skills, were all intact. *See* Tr. 23, 25, 422. Accordingly, the ALJ properly determined to reject Dr. Shapiro's restrictive opinion (*i.e.* that Plaintiff would not be able to handle stress or work in proximity to others) because it appeared based solely on Plaintiff's subjective reports of her symptoms and daily interactions, rather than on objective findings. *See* Tr. 25; 20 C.F.R. § 416.927(c)(3). Moreover, the ALJ's conclusion is supported State agency medical consultant Dr. Kamin's

13

opinion, who reviewed Dr. Shapiro's report and concluded that the restrictive portion was largely based on Plaintiff's subjective statements and was not supported by the preponderance of the medical evidence of record. *See* Tr. 24-25, 441-42. The ALJ properly considered and gave greater weight to Dr. Kamin's opinion. *See* Tr. 24-25; 20 C.F.R. § 416.927(e)(2); SSR 96-6p, 1996 WL 374180; *Diaz*, 59 F.3d at 313 n.5.

The Court finds that the ALJ properly evaluated the evidence in arriving at Plaintiff's RFC, which is supported by substantial evidence. Plaintiff's motion in this regard is denied.

### 4. Assessment of Plaintiff's Credibility

Plaintiff contends that the ALJ improperly determined that her statements concerning the intensity, persistence and limiting effects of her symptoms were not credible.

An ALJ has discretion to evaluate the credibility of a claimant and to make an independent judgment based on medical findings regarding the true extent of the claimant's symptoms. *Mimms v. Heckler*, 750 F.2d 180, 186 (2d Cir. 1984); *Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983). It is the function of the Commissioner, not the reviewing court, to "resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Caroll v. Sec'y of Health and Human Serv.*, 705 F.2d 638, 642 (2d Cir. 1983); *see Gernavage v. Shalala*, 882 F. Supp. 1413, 1419 n.6 (S.D.N.Y. 1995)(An ALJ's determination with respect to the credibility of witnesses is given great deference because the ALJ heard the testimony and observed the demeanor of the witnesses). Further, Plaintiff must produce appropriate, probative evidence in support of any subjective statements of symptoms, 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4), and the ALJ's decision to discount Plaintiff's statements of symptoms must be accepted by a reviewing

14

court unless it is clearly erroneous. *Centano v. Apfel*, 73 F. Supp. 2d 333, 338 (S.D.N.Y. 1999). "An ALJ's evaluation of Plaintiff's credibility is entitled to great deference if it is supported by substantial evidence." *Nelson v. Astrue*, 2010 WL 3522304, at *6 (N.D.N.Y. Aug. 12, 2010).

When an individual has a medically determinable impairment that could reasonably be expected to produce the symptoms alleged, but the objective evidence does not substantiate the alleged intensity and persistence of the symptoms, the ALJ considers other factors in assessing the individual's subjective symptoms. These factors include: (1) Plaintiff's daily activities; (2) the nature, duration, frequency and intensity of her symptoms; (3) precipitating and aggravating factors; (4) the type of medication and other treatment or measures which Plaintiff uses to relieve pain and other symptoms; (5) treatment other than medication Plaintiff has received for relief of pain and other symptoms; (6) any other measures used by Plaintiff to relieve pain and other symptoms; and (7) other factors concerning Plaintiff's functional limitations and restrictions due to pain or other symptoms. *See* 20 C.F.R. § 416.929(c)(3). However, the ALJ is not required to explicitly recite the seven factors set forth in 20 C.F.R. § 416.929(c)(3) when the credibility determination is supported by substantial evidence in the record. *See Cichocki v. Astrue*, 534 Fed. Appx. 71, 76 (2d Cir. 2013).

Contrary to Plaintiff's suggestion, the ALJ acknowledged that Plaintiff did not have her GED and she still lived with her mother and children, and the ALJ reasonably noted Plaintiff's statement that she was motivated to earn her GED and live on her own. *See* Tr. 21, 23-24, 26, 36-38, 44, 474. The medical evidence does not establish that Plaintiff lacked

15

the mental ability to follow through with those goals. Plaintiff also reported that she was looking for a part-time job and she was practicing for a driver's license. *See* Tr. 24, 451, 460, 464-66, 477. Although Plaintiff lived with her mother, Plaintiff performed extensive household chores and dealt with insurance claims to repair damage to their home after a fire. *See* Tr. 23-25, 423, 444, 460, 472-74, 487.

Also contrary to Plaintiff's suggestion, the ALJ noted that Plaintiff's diagnoses included OCD, and that she cleaned almost to an obsessive level. *See* Tr. 23-24, 416, 495. However, Plaintiff failed to establish any limitations (such as in her ability to concentrate) stemming from that impairment. In addition, the ALJ properly noted that Plaintiff had maintained other activities of daily living. *See* Tr. 19, 21, 23-25. Plaintiff was able to care for her personal needs, use public transportation when there were not a lot of people, shop when accompanied, manage money, prepare meals, and attend appointments regularly. *See* Tr. 19, 21, 23-25, 42, 49, 52, 423, 444, 466. Plaintiff also performed childcare for her three young children and her younger sister, sometimes taking her children to therapy sessions with Ms. Sanderson, who observed that Plaintiff was a good parent. *See* Tr. 19, 21, 23-25, 37-38, 423, 444, 471-72, 482. Plaintiff also effectively sought child support from the father of her children, and she was seeking custody of the children. *See* Tr. 23-25, 448, 465, 472.

It was reasonable for the ALJ to find Plaintiff's subjective allegations not credible to the disabling extent alleged. *See* Tr. 21, 23-25. The ALJ properly provided specific reasons for his credibility finding, supported by the evidence in the record, as discussed above. *See* Tr. 19, 21, 23-25. The ALJ properly relied on the medical evidence and his evaluation of

16

Plaintiff's credibility in determining whether she experienced disabling symptomatology. Affording the ALJ's credibility determination the deference it deserves, the Court finds no reason to disturb the ALJs conclusions in this regard. Plaintiff's motion on this basis is denied.

### 5. Reliance on Vocational Expert Testimony

Plaintiff contends that the ALJ's conclusion that there were other jobs in the national economy that Plaintiff could perform, such as a laundry worker, a hand packer, or an assembler, is not supported by substantial evidence. Plaintiff's position in this regard is based on the contentions that the ALJ failed to properly develop the record, reached an RFC determination unsupported by substantial evidence, and improperly analyzed Plaintiff's credibility.

For the reasons discussed above, each of Plaintiff's contentions in support of this position is without merit. Further, the ALJ properly relied on a vocational expert's testimony in determining whether there were jobs available that were suited for Plaintiff's vocational factors and RFC. See 20 C.F.R. § 416.966(e). The ALJ's hypothetical question to the vocational expert matched Plaintiff's RFC. *See* Tr. 20, 54-55. As such, the ALJ properly relied on the testimony of the vocational expert. *See* Tr. 26-27, 55-56; 20 C.F.R. § 416.966(e); *Calabrese v. Astrue*, 358 Fed. Appx. 274, 276-77 (2d Cir. 2009) (citing *Dumas*, 712 F.2d at 1553-54; *Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981)) (ALJ properly relied on vocational expert's testimony, as the hypothetical was based on the ALJ's RFC assessment, which was supported by substantial evidence). Consequently, substantial evidence supports the ALJ's conclusion that Plaintiff could perform work existing in

17

significant numbers in the national economy and, therefore, was not disabled. Plaintiff's motion in this regard is denied.

## VI. CONCLUSION

The Court finds that the Commissioner applied the correct legal standards, and there is substantial evidence to support her factual determinations. Therefore, Plaintiff's motion for judgment on the pleadings is **DENIED**, Defendant's motion for judgment on the pleadings is **GRANTED**, and the Court **AFFIRMS** the final decision of the Commissioner.

**IT IS SO ORDERED.**

Dated: March 25, 2015

_____
Thomas J. McAvoy
Senior, U.S. District Judge